May it please the Court, David H. Bowser, appearing for appellant M. G. Construction v. Navy. The issue before the Court today is whether or not the United States Court of Federal Claims erred in denying applicant M. G. Construction's motion for summary judgment and granting the United States summary judgment when it interpreted the contract between the as not requiring for the payment of aggregate surface removal under a separate line item. The standard review for both grant and denial of summary judgment and for questions of contract interpretations is de novo.  Your Honor, this was an 8-8-8 set-aside contract. M. G. Construction, that stands for Miguel Garcia, he was an immigrant to this country. This was an 8-8-8 set-aside contract and I believe he was provided through those eyes of a reasonable 8-8-8 contractor who was looking at this material. Okay, well, speaking of how one would construe it and how one would look at it, there's a hundredfold difference between the quantities on the AA line and the AC line and you're saying that we should kind of ignore that or ignore the fact that that's the document that everyone's operating on on the law and in order for you to prevail, you would really have to ignore that difference, right? Your Honor, under the law and under the Code of Federal Regulations, this is a requirements contract. By its very nature, that means the government cannot determine the amounts that it needs. Yeah, well, that does, but I don't know, maybe you know better than I, but it seems to me that means that it's just an estimate, but the difference between, well, it's just an estimate and a hundredfold difference seems to me to be quite a distinction. These are just estimates, but whenever you look at the estimates in this kind of requirements contract, they are all over the board and the law tells the contractor that you cannot rely upon these estimates, that if it says you're going to get $20,000 and you only get $1,000, you cannot come into court and make a claim for those other $19,000, whatever the units are. And for example, if you look at, in the appendix at page 60, these are, this is the bid schedule which is highly relevant to the issue before the court. And specifically, up at the top there, you'll see install four-ply burrs with insulation and gravel. Then you come down and it says less than five squares per delivery order and then it says, well, you can expect four squares under that. And then it says more than five squares per delivery order and then it says again, you can expect four squares. Was there ever a delivery order under 1AA? There was never a delivery order that included the 1AA number, but if you look at each and clearly instructed MG Construction to remove the existing roof and to put one. But didn't they utilize the public delivery order, 1AC? They used 1AC on that, but in those delivery orders, they told them to remove the existing roof and to install either a... Under 1AC. They told them to do that and if you look in the... So they're trying to double collect. Not trying to double collect, Your Honor, because 1AC only applies to the membranes that are in the roofing system plus two inches of insulation. 1AC is separate from 1AA, which is the aggregate surfacing. Wait a minute. The burrs, what does it stand for? Built-up roofing system? Burrs. It's B-U-R-S. That's what they put in there. And that's AC is remove the burrs. Is there any dispute that the burrs consist of four layers and one of those layers is the aggregate surfacing layer? There's a difference. If you're talking about a built-up roofing system... Just answer my question. Can you answer my question yes or no? In general, a built-up roofing system does have multiple layers to it. Including? Which can or cannot include a layer of aggregate. All right. Now go ahead and explain. There's a difference between what a built-up roofing system is in general and for how the government agreed to pay for it under the bid item breakdown. For example, if you look in the specifications for scope on A71, it tells you to refer to the bid schedule as furnished by the base contracting officer for breakdown of the bid items. If you go to the items description that was in the specifications, and that's in the appendix of page 82, the last thing they tell you in that section is to refer to the bid schedule provided by the government for the actual breakdown of bid items. Then you go to the actual bid breakdown, which is at A59, and what do you find? You find that the removal of the burrs roof has been broken down into elements. Now, if you look at the exact language, which is in AC, it says remove burrs. Then there's a parenthetical, 5 plot max. That parenthetical ends, and then it says, and 2 inches of insulation. So within the same line item here that the government is claiming is all inclusive of every layer, it specifically divides burrs and insulation in that same line item. To get to the interpretation that the court used, the court actually ended up changing the language and moving the parentheticals around. If you look at the addendum that I attached to my brief on page 11, there's a copy of the opinion that was published. If you look right at the top of page 186, it says by listing CLIN, because 1AC has removed burrs, they do parenthetical, 5 plot max, and 2 inch insulation. They removed the parenthetical that separated and left the insulation as its own item. One of the other arguments that the government made was that, well, the aggregate section was only for spot removal. And that's what the other CLINs are that are located below that, that are also components. They're for spot removal. The problem is that if you look at the bid breakdown, there's not a spot removal for the membrane plies. So for those lower layers that they say they have CLINs in for spot removal, there's no CLIN which allows them to get to that level. And also if you look in the bid breakdown, there are no line items to put any kinds of materials back in those spots. So is it your view that there's an ambiguity, or that there's no ambiguity and there's clarity and you want to win because there's no ambiguity? I don't believe that there was an ambiguity. There's no ambiguity here? No, Your Honor. If you go and you look at the specifications which are specific to demolition, there's not a whole section just for demolition itself. The government wanted to look at 1750. That is an installation specification. And if you look at that specification, it assumes that all demolition has been done. If you look at the appendix at page 101 on part 3, execution, the first thing the contractor has to perform is an examination under the installation specification. And you're supposed to verify. Your Honor, with all these mental gymnastics, it still seems to me you are trying to collect under a CLIN that was never activated when the contract says that the government will identify all work by delivery order when there was no delivery order under the CLIN under which you are trying to collect. I mean, you're sort of arguing down here into the depths of the forest when you've got these trees, when you've got the forest. Maybe by now it isn't very good. But you've got these basic principles that you're talking. The contract is established before any delivery order ever comes out. The manner in which energy was entitled to be paid was established. And what they were entitled to be paid for was already established before any delivery order was ever issued. The delivery order is to take the roof off. If you look at the affidavit of Miguel Garcia that I have attached in here, when he got the delivery orders, and they were making him take off the aggregate without paying him for it, he complained to the government. The government told him, do the work. You're not going to get paid for the aggregate. I do not think that the government can modify an established contract by... it's a debate. Well, before he got started on the work, didn't it... I mean, you're right, it's just an estimate. But wasn't there anything striking to your client that there was a 200 under the estimated quantity for AA and a 23,000 quantity for the estimate of AC? No, there actually wasn't, because... But it turned out, I mean, what you're saying that you're entitled to pay for is what? The 200 was estimated for AA. If you were to prevail, what would that number be? 243,100. So your client didn't notice at any time that there was a discrepancy between the 230,000 and the 200? No, whenever a contractor is sitting down with one of these requirement contracts, what's important to them is that... I don't know how much aggregate surfacing removal the government is going to give me. They're not guaranteeing me one square foot of removal. But if they need it this year, they're going to have to come to me and they're going to pay me $1.50 a square foot to remove that. That is what is important to the roofing contractor is, what is my unit price? Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. This Court should affirm the ruling of the Court of Federal Claims for three reasons. One, the plain language of the contract in question specifically defines a built-up roofing system or BRRS to include aggregate surfacing. So what's AA? What's the removed aggregate surfacing category? AA is a separate contract line item which allowed the government, if necessary, to order the spot removal. of specifically aggregate surfacing as opposed to an entire BRRS. And that is why, as Your Honor pointed out, the quantities between AA, 001A, and the line item four, the removal of BRRS, were more than 100 times the part. The removal of BRRS was 100 times greater than the removal of AA. Moreover, the contract specifically called for the work to actually be done under the contract to be identified by the government in a delivery order. In each of the delivery orders in which BRRS removal was required, only 001A-C, the general line item for BRRS removal, was activated. 001A-A, the specific line item for aggregate surfacing, for which NGDC's additional payment here was never activated. But that doesn't conclude your argument. He says it confided. I mean, you know, because the government put that number on it. If we were to conclude, for instance, that it is included under AA and not AC, the fact that the government put the number on the paper wouldn't have conclusive effect on what we were doing here, right? Well, Your Honor, the fact that Mr. Garcia complained, one, it's not entirely clear on the record that he did, but even if he had, that would only not preclude him from recovering if one, MG's interpretation of the contract was reasonable. If it's understanding that these separate line items individually sort of set forth a step-by-step basis by which to remove the BRRS was reasonable. If it was, there would be a patent ambiguity in the contract, given these various other apparent discrepancies in the contract. Then, perhaps, the fact that he may have complained would allow him to recover. But his interpretation was not reasonable for a number of reasons. One, as I said, the contract specifically defines a BRRS as including aggregate surfacing. Two, Mr. Garcia's affidavit or declaration, which is attached to the Joint Appendix of page 146, admits that, in general, a BRRS includes aggregate surfacing, and the contract actually states that the industry standard for BRRS will be, or industry standard for roofing requirements in general, will be incorporated into the contract. Under MG's understanding, with the sort of breakdown of separate line items, 001AC, BRRS would all of a sudden be limited to just flies. So now the definition would be, one, clearly inconsistent with the specifically set forth definition in the contract, and it would also be at odds with sort of the general understanding of what a built-up roofing system is, and the fact that a built-up roofing system includes these four layers. MG's interpretation is also totally unreasonable because, as he pointed out, the quantities between 001AA for the separate aggregate surfacing removal and 001AC for the removal of BRRS were so enormously disparate. Clearly- I forget if Mr. Bowser has an answer to what I asked him about, which was that he cares. I mean, these are just estimates. They're not probative of anything. Well, they're certainly just estimates, Your Honor, but I wouldn't agree with the assertion that they're not probative of anything. Under a requirements contract, certainly, they're estimates and they're not guaranteed quantities, but the government is obligated to set forth a reasonable estimate of the quantities it expects to utilize under the contract so that it can obtain reasonable estimates from prospective bidders so that it can award that contract. Those requirements are not simply just sort of thrown in there willy-nilly to get a contract or a solicitation done. Those are, in fact, quite relevant, and whether or not they can be relied upon in terms of actual guarantees of work, that still doesn't mean it's reasonable to just sort of ignore the fact that two line items, which ostensibly are to be read together, are more than 100 times apart when, under MG's interpretation, they're supposed to be for the same work. Again, significantly, the contract specifically stated that the actual work to be done in terms of demolition for BRRS was to be done pursuant to a delivery order, and it's actually already pointed out none of the specific delivery orders at issue here ever activated 001AA, the separate aggregate servicing removal requirement. MG does not dispute this. They've said over and over again the only removal for BRRS, the line item that was ever activated, was 001AC. Now, in seeking payment for an unactivated claim for work that was already done for which MG was paid, MG is essentially asking this court to ignore the plain language of the contract, which says specifically that the government will identify work pursuant to delivery order, and the only line item that was activated was 001AC. In its briefs, MG states that despite the fact that there was this delivery order requirement, each delivery order referred back to the original bid schedule. Now, that's not accurate. Each delivery order, in fact, included a specific schedule which identified only those activated line items for the work set forth in that delivery order. Again, each of those line items, or each of those attached schedules, activated only line item 001AC. Did the number end up corresponding? To what extent did the number end up corresponding to the 22,000 in the estimated quantity? At the end of the day, do you know? I do, Your Honor. In fact, the amount of BRRS actually removed by MG was, as Mr. Bowser stated, in excess of 240,000 square feet. So it was, in fact, greater than the requirements set forth in the solicitation. But nothing under the double A category was never removed? No, Your Honor. For an excess of 240,000 square feet of work, 001A was never activated. Finally, with regards to a question you asked earlier, Judge Frost, the only way – if this court were to find that MG's interpretation was reasonable, which would not, again, create a patent ambiguity, which would obligate MG to inquire with the government as to any sort of misunderstanding it may have had. Now, there's nothing in the record to indicate that any time during the pre-award solicitation performance on the actual contract, or even invoicing under this contract, that MG did, in fact, make such an inquiry. The only thing MG can point to now is the declaration of Mr. Garcia, which is attached to the appendix, which is not dated, does not state specifically what sort of inquiry Mr. Garcia made, or to whom, or what exactly was asked. Really, all it does is refer to broadly and overrun, for which it was not paid. That alone is not enough to have done to state that it had made the necessary inquiry. For these reasons, we respect the request that this court affirm the ruling in the court of federal claims. Thank you. Your Honor, first of all, counsel stated that MG has been stating that the delivery orders are subject to the line items, and I can make that up. If you look at appendix 132, which is delivery order number three, it specifically says that all roofing-related works shall be performed in accordance with the specifications of the requirements contract, any attached drawings, and line item list. So we're not making that up. As for the estimates, I noticed that the number of, for the amount of burrs that went under the delivery orders is over ten times the amount that was put in as the estimates, too. It's just another example that the estimates in this kind of contract are just not that important to the contractor. They know what they're going to be paid. It's going to be paid the unit price per unit, and that's what my client bought along for here. The installation specification has nothing to do with demolition. If you look at the only section that deals with demolition, it specifically tells you at the end of the bid item breakdown to go refer to the bid schedule provided by the government for actual, the word actual is used here, actual breakdown of bid items. This installation specification has nothing to do with demolition. It assumes that's already done and over with. My client looked at the relevant specifications. He went to the bid item breakdown, the actual bid item breakdown supplied by the government. He bid $1.50 a square foot to remove the aggregate, $0.80 to remove the plies, and up to two inches of insulation. If you look at the next page right behind that one, it goes where they're talking about installing, install four ply burrs with insulation and gravel. Again, in the very bid schedule where he was told to go look for a breakdown, they're using B-U-R-S, all in caps, as utilizing something less than all the components of the roof. They wanted him to take these roofs off. He took these roofs off. The aggregate is the most labor-intensive part of this whole process. They told him it was a breakdown. He bid it as a breakdown. Unless your honors have any other further questions. Thank you very much. Case is submitted.